UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NEHEMIAS HUERTAS, JR.,

    Plaintiff,

    v.                                                                   Case No. 19-C-592

MILWAUKEE COUNTY COMMON COUNSEL, et al.,

    Defendants.

## SCREENING ORDER

*Pro se* plaintiff Nehemias Huertas filed a complaint under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This case is currently assigned to U.S. Magistrate Judge Nancy Joseph. Although the plaintiff consented to magistrate judge jurisdiction, *see* Dkt. No. 5, the defendants have not yet been served with the complaint and have not had the opportunity to consent to Judge Joseph. Because *both* parties have not yet consented to magistrate judge jurisdiction, the clerk's office referred the case to Judge Pamela Pepper to resolve the pending motions and screen the complaint. The case has since been referred to this court. The court will explain which claims the plaintiff has stated against which defendants, serve the proper defendants, and return the case to Judge Joseph for further proceedings.

**I.    MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. § 1915. The law allows an incarcerated plaintiff to proceed with a lawsuit in federal court without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. § 1915(b). Once the plaintiff pays the initial partial filing fee, the court can allow

the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On May 16, 2019, Judge Joseph ordered the plaintiff to pay an initial partial filing fee of $5.33. Dkt. No. 7. The plaintiff paid that fee on May 28, 2019. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     MOTION TO AMEND COMPLAINT

On November 14, 2019, the plaintiff filed a motion to amend the complaint, along with a proposed amended complaint. Dkt. No. 12. The plaintiff can amend his complaint once "as a matter of course" within 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A). The court has neither screened nor served the complaint. Therefore, the plaintiff may amend the complaint as a matter of course. Accordingly, the court will deny the plaintiff's motion to amend complaint as moot and will screen the proposed amended complaint.

## III. SCREENING OF THE PLAINTIFF'S AMENDED COMPLAINT

The PLRA requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for

2

the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A. <u>Facts Alleged in the Amended Complaint</u>

The plaintiff was a pretrial detainee at all times relevant to this matter. Dkt. No. 12-1, ¶ 3. The defendants are Milwaukee House of Corrections ("HOC") superintendent Michael Hafemann; HOC correctional officers Waite, Morton, and Murray; Armor Health Care; Armor medical director Karen Horton; Armor doctors Shelly Johnson and Jackie Christanson; Well Path Health Care; Well Path medical director Laura Sukowaty; Well Path doctor Jennifer Sabatier; Armor/Well Path nurses Dombeck, Holly, Sheryl, Mud, and Scott; Well Path Nurse Jane Does #1-7; and Milwaukee County. *Id.*, ¶¶ 4-27.

On February 14, 2019, the plaintiff had an "enlarge bursta" on his left elbow that suddenly ruptured while at the Milwaukee County Jail. *Id.*, ¶ 30. Jail staff took a blood sample and a culture; both were negative for an infection. *Id.*, ¶ 31. The plaintiff then transferred to the HOC on February 24, 2019. *Id.*, ¶ 32.

On or around March 5, 2019, the plaintiff told Correctional Officer Waite that he "required immediate medical attention." *Id.*, ¶ 33. Waite failed to immediately call the Health Services Unit ("HSU"). *Id.*, ¶ 33. Instead, he took the plaintiff to the gymnasium and "forced [the plaintiff] to wait in the gymnasium for four hours in excruciating pain with a dirty and wet loose bandage and open wound left unattended, exposed to infection." *Id.*, ¶ 33. The plaintiff asked Waite for medical attention numerous times during the four-hour period, but he refused to seek medical attention. *Id.*, ¶ 34.

3

On or around March 10, 2019, the plaintiff asked Correctional Officer Boescher (not a defendant) to take him to HSU for "wound care" for his left elbow. *Id.*, ¶ 35. The wound "was draining fluid and causing pain." *Id.* Boescher contacted HOC medical staff numerous times but they "ignored the problem for three hours." *Id.* The plaintiff didn't receive medical treatment until 1:30 p.m. that day. *Id.* The following day, on March 11, 2019, Orthopedic Doctor Mark Hodgson (not a defendant) diagnosed the plaintiff with a "septic" left elbow. *Id.*, ¶ 36.

About a week later, on March 20, 2019, Doctor Hodgson performed a surgical procedure on the plaintiff's left elbow at the Orthopedic Hospital of Wisconsin. *Id.*, ¶ 37. Following the procedure, Doctor Hodgson prescribed "Norco," a pain medication. *Id.*, ¶¶ 37-38. When the plaintiff went back to HOC later that day, Nurse Tammy (not a defendant) refused to give him the medication, claiming that it was "against the law" for her to provide opioids to an inmate. *Id.*, ¶ 37. The plaintiff explained that he just had surgery and was in severe pain, but she nevertheless refused to provide the medication. *Id.* The plaintiff notes that he is allergic to Tylenol, and Norco contains Tylenol. *Id.*

The following day, on March 21, 2019, the plaintiff went back to the Orthopedic Hospital for a follow up with Doctor Hodgson. *Id.*, ¶ 38. The plaintiff told Hodgson that HOC medical staff wouldn't give him Norco because he is allergic to Tylenol. *Id.* The plaintiff asked for a new pain medication that didn't have Tylenol, but Hodgson refused, stating, "it's out of my hands." *Id.* The plaintiff later saw Doctor Christanson about the same issue, and she also refused to prescribe a replacement pain medication. *Id.*

A few days later, on March 26, 2019, the plaintiff saw Doctor Johnson for severe pain in his left elbow. *Id.*, ¶ 39. She prescribed Tramadol, a pain medication that turned out to be

4

ineffective. *Id.* The plaintiff requested a different pain medication, but Johnson refused. *Id.* Instead, she only prescribed physical therapy. *Id.*

On or around April 2, 2019, the plaintiff told Nurse Sheryl that he felt itchy and had trouble swallowing. *Id.*, ¶ 40. She asked what medication the plaintiff was taking, and the plaintiff responded "T3." *Id.* Nurse Sheryl said that "T3" stood for "Tylenol 3" and that "whoever put you on that messed up." *Id.* The plaintiff later reviewed his medical records and discovered that Nurse Sherly had ordered the medication and that Dr. Sukowaty had approved it. *Id.*

On April 8, 2019, the plaintiff saw Nurse Dombeck for a follow up appointment. *Id.*, ¶ 41. He told Dombeck that he had chronic pain in his left elbow following surgery and that two different doctors refused to prescribe effective pain medication. *Id.* Dombeck responded, "I'm not prescribing pain killers." *Id.*

On April 13, 2019, the plaintiff "had an obvious open bleeding wound that required immediate medication attention." *Id.*, ¶ 42. Correctional Officer Miguel (not a defendant) contacted HSU numerous times but HSU staff "ignored the urgency of the issues." *Id.* The plaintiff experienced excruciating pain for seven hours and did not receive medical care until 1:15 p.m. that day. *Id.* Correctional Officer Serrano (not a defendant) later told the plaintiff that there was delay in medical care because Nurse Holly "don't want to work." *Id.*

On or around April 17, 2019, the plaintiff saw Doctor Sabatier for severe chronic pain in his left elbow following surgery. *Id.*, ¶ 43. The plaintiff told her that he was supposed to be on pain medication, but she refused, stating, "I'm not providing pain killers." *Id.* The following day, on April 18, 2019, the plaintiff saw Nurse Dombeck about the pain in his left elbow; Dombeck prescribed Naproxen, a medication that turned out to be ineffective to treat the pain. *Id.*, ¶ 44. Dombeck also referred the plaintiff back to Doctor Hodgson. *Id.*

5

On April 29, 2019, CO Gilbert (not a defendant) called HSU because the plaintiff's bandage was "obviously bloody" and he was in excruciating pain. *Id.*, ¶ 45. Gilbert stated that Nurse Scott and Nurse Mud both refused to see him. *Id.* Correctional Officer Murray was also there; she laughed and said, "that's why you're going to be in pain." *Id.*

In May 2019, Jane Doe Nurses #1 through 7 failed to perform prescribed dressing changes to the plaintiff's bandages on seven different days: May 3, May 7, May 18, May 20, May 21, May 22, and May 27. *Id.*, ¶¶ 46-52.

For relief, the plaintiff seeks monetary damages and a variety of injunctions. *Id.*, ¶¶ 60-83.

B.  Legal Analysis of Alleged Facts

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Individual liability under § 1983 is predicated on a defendant's personal involvement in the constitutional deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "[L]iability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (internal citations omitted). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry*, 65 F.3d at 561 (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). The official

"must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

The plaintiff fails to allege any facts against Michael Hafemann, CO Morton, and Karen Horton. He doesn't allege that he told these individuals about his "septic" elbow/chronic pain nor does he allege that they otherwise knew about his condition. Accordingly, the court will dismiss these individuals from the case based on their lack of personal involvement.

Municipal and private entity liability under § 1983 is predicated on a "policy or custom" attributable to policymakers within the government or private entity. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691-94 (1978)); *see also Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017). A "policy or custom" may take one of three forms: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

The plaintiff also fails to identify a "policy or custom" that violated his constitutional rights. He identifies a variety of individuals who individually refused to provide him with medical care, but he doesn't identify any broader custom or policy that they were following. Therefore, the court will dismiss Milwaukee County, Armor Health Care, and Well Path Health Care from this action based on the plaintiff's failure to state a claim upon which relief can be granted.

A pretrial detainee's medical care claim is governed by the Fourteenth Amendment objective unreasonableness standard. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir.

2018) ("[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*."). "The first step . . . remains unchanged and 'asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case.'" *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 353). The second step asks "whether the challenged conduct was objectively reasonable." *Id.* "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

The plaintiff states that Waite, Murray, Johnson, Christanson, Sukowaty, Sabatier, Dombeck, Holly, Sheryl, Mud, Scott, and Jane Does #1 through 7 all knew about his "septic" elbow/chronic pain and they failed to provide appropriate treatment. Based on these allegations, the plaintiff may proceed with a Fourteenth Amendment medical care claim against these individuals.

## IV. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. The court **ORDERS** the agency having custody of the plaintiff to collect from his institution trust account the **$344.67** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff

transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **DENIES** as moot the plaintiff's motion to amend the complaint. Dkt. No. 12. The Clerk is directed to detach and e-file the amended complaint (Dkt. No. 12-1), the exhibits to the amended complaint (Dkt. No. 12-2), the declaration of Robert L. Duncan (Dkt. No. 12-3), and the declaration of Marlon Tirado (Dkt. No. 12-4).

The court **DISMISSES** Michael Hafemann, CO Morton, Armor Health Care, Well Path Health Care, Karen Horton, and Milwaukee County from this case.

Pursuant to the informal service agreement between Milwaukee County and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's complaint and this order to Milwaukee County for service on Waite, Murray, Sukowaty, Christanson, Johnson, Sabatier, Dombeck, Nurse Holly, Nurse Sheryl, Nurse Mud, and Nurse Scott. These defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** the parties to not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions. The court will provide instructions on how/when to identify Jane Doe Nurses #1-7 in the scheduling order.

The court **ORDERS** the Clerk's office to return this case to Judge Joseph for further proceedings.

The Court **ORDERS** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the

9

court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If Plaintiff is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, WI 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk's office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this 19th day of February, 2020.

>s/ William C. Griesbach
>William C. Griesbach, District Judge
>United States District Court