UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

NEHEMIAS HUERTAS, JR.

                Plaintiff,

v.                                                    Case No. 19-cv-0592-bhl

TAYLOR E. WAITE, et al.,

                Defendants.
_____

**ORDER**
_____

**BACKGROUND**

On April 24, 2019, plaintiff Nehemias Huertas, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that seven defendants violated his civil rights. Dkt. No. 1. On November 14, 2019, Huertas filed a motion to amend the complaint, along with a proposed amended complaint, through which he sought to add 18 defendants, including a number of unidentified "Jane Doe" defendants, while dismissing his claims against three parties named in the original complaint. Dkt. No. 12. On February 19, 2020, the Court allowed the proposed amendment and proceeded to screen the amended complaint. Dkt. No. 18. In the screening order, the Court ruled that Huertas could proceed with Fourteenth Amendment medical care claims against several of the defendants, including three nurses who were only partially identified and seven "Jane Doe" defendants." *Id*. at 8. The Court dismissed Huertas' claims against the remaining defendants. *Id*.

Since the screening order, substantial time and effort has been expended to serve the amended complaint and screening order on the defendants, and counsel have appeared for several of them. Dkt. Nos. 23-24, 29, 37, 39, 52, and 57. All of these defendants have now answered the complaint. Dkt. Nos. 25, 36, 40, 42, 58, and 71.

1

Despite repeated efforts, service has not been made on defendants Jennifer Sabatier and "Nurse Scott." Dkt. No. 68. On November 9, 2020, the Court received a letter from attorney Ryan Wiesner explaining that both Sabatier and Nurse Scott are former WellPath employees and that Wiesner therefore cannot accept service for them. Dkt. No. 69. Wiesner further explained that he has attempted to locate these individuals to assist the Court and the U.S. Marshals in completing service, but he has been unsuccessful. *Id.* Thus, Sabatier and Nurse Scott remain unserved.

In the midst of these service efforts, Huertas has filed four additional motions. On March 17, 2020, he filed a motion to appoint counsel. Dkt. No. 35. On May 20, 2020, he filed a motion for leave to amend the complaint. Dkt. No. 44. On September 18, 2020, he filed yet another motion for leave to amend the complaint, hoping to add ten more defendants, to "correct" his claims against three of the existing defendants, and to bring back into the lawsuit one of the defendants, Corrections Office Morton, that was dismissed in the February 19, 2020 screening order. Dkt. No. 53. The proposed second amended complaint is 39-pages long. Dkt. No. 53-1. Finally, on December 21, 2020, Huertas filed a "Motion to Introduce Relevant and Essential Evidence." Dkt. No. 77.

All the defendants who have appeared oppose the motions to amend. Dkt. Nos. 59, 62 and 72.[1] The defendants collectively oppose the motion to amend because the allegations are vague, difficult to read, and contain many new details that may be easily missed. Dkt. No. 59. The defendants also note that this case was filed almost two years ago, and presumably, they want to move this case along without having to wait for service and answers from ten more defendants.

**ANALYSIS**

1. **Motion to Appoint Counsel**

---

[1] Rather than independently responding, several defendants have moved to join the oppositions filed by other defendants. The Court will grant the defendants' motions to join responses.

In his motion to appoint counsel, Huertas states that he is indigent and unable to afford counsel; that he has a 2.0 reading level, no high school degree, and a learning disability; and that the jailhouse lawyers who have been helping him with the lawsuit are not reliable sources of assistance because they come and go from the institution. Dkt. No. 35. Huertas also states that he has attempted to recruit counsel on his own but has been unsuccessful. *Id*.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.,* 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh,* 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan,* 750 F.3d 708, 711 (7th Cir. 2014)). In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish,* 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote,* 503 F.3d 647, 653 (7th Cir. 2007)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority,* 930 F.3d 869, 871 (7th Cir. 2019). To do so, Huertas must show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell*, 923 F.3d at 490. The Court looks at "whether the difficulty of the case, factually,

3

legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

The Court is satisfied that Huertas made reasonable attempts to recruit counsel on his own. *See* Dkt. No. 35-1 at 9-20. However, it will not recruit counsel at this time. Huertas states that he is indigent and does not have a high school degree, but those circumstances are not unique to the plaintiff or this case. Many, if not most, prisoner-plaintiffs find themselves in similar circumstances. This is precisely why the Seventh Circuit has repeatedly noted that deciding whether to recruit counsel is a "difficult decision." Moreover, the Court has been able to understand Huertas' factual assertions and legal arguments thus far, and it does not have any concerns about his ability to present his case at this time. The Court is aware that jailhouse lawyers can be unreliable, but the Court can address that issue when it becomes a problem. The Court need not address that hypothetical problem right now. Accordingly, the Court will deny Huertas' motion to appoint counsel without prejudice.

### 2. Motions to Amend and Service on Unserved Defendants.

This case has been pending for a long time with little progress. While the delay is not necessarily Huertas' fault, the Court agrees with the defendants that it is time for this case to move forward. Accordingly, the Court will deny Huertas' requests to amend the complaint. The first

4

request to amend is moot, given that Huertas filed a second motion before the Court could rule on his first motion. Huertas' second motion is denied for two reasons. First, the 39-page proposed second amended complaint violates Rule 8, which requires a "short and plain" statement of claims. *See e.g. Kadamovas v. Stevens,* 706 F.3d 843, 844 (7th Cir. 2013) ("District judges are busy, and therefore have a right to dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the judge's attention."). Second, Civil Local Rule 15(b) required Huertas to "state specifically what changes are sought by the proposed amendments." Civ. L. R. 15(b) (E.D. Wis.) Huertas has not done this. Huertas' motion generally explains *some* of the changes he seeks (i.e. adding more defendants and facts) but he does not identify *all* of the changes he made in the proposed second amended complaint. The Court reviewed the proposed second amended complaint and found at least three additional legal claims that Huertas did not mention in his motion to amend, including "failure to protect," "involuntary administration of prescription medication," and "defamation." Dkt. No. 53-1 at 35-37. As the defendants noted, there may be other changes in the proposed amended complaint that they, or this Court, may have missed. Given the time that has passed, the need to move this case forward, and Huertas' efforts to make this case more complicated rather than more simple, including his failure to comply with Civil Local Rule 15(b), the Court will deny the motion for leave to file a second amended complaint.

Huertas must also promptly decide how he wishes to proceed with respect to the two defendants who have not yet been served (Sabatier and "Nurse Scott"). If Huertas wishes, he can voluntarily dismiss those defendants without prejudice and proceed with his lawsuit against the many defendants already named and served. Alternatively, Huertas may offer some other alternative for achieving service of these two final defendants. The Court will allow Huertas 14 days to explain what he plans to do. If the Court does not hear from Huertas within 14 days, it

5

Case 2:19-cv-00592-BHL   Filed 01/11/21   Page 5 of 6   Document 81

will dismiss Sabatier and "Nurse Scott" based on failure to prosecute, *see* Civ. L. R. 41(a) (E.D. Wis.), and will issue a scheduling order as to the remaining defendants with deadlines for discovery and dispositive motions.[2]

**IT IS THEREFORE ORDERED** that:

(1) The plaintiff's motion to appoint counsel (Dkt. No. 35) is **DENIED**;

(2) The plaintiff's first motion to amend the complaint (Dkt. No. 44) is **DENIED**;

(3) The plaintiff's second motion to amend the complaint (Dkt. No. 53) is **DENIED**;

(4) The defendants' motions joining response to the plaintiff's motion for leave to amend (Dkt. Nos. 62 and 72) are **GRANTED**;

(5) The plaintiff's motion to introduce relevant and essential evidence (Dkt. No. 77) is **DENIED**; and

(6) The plaintiff must file a written document with the Court, on or before **January 25, 2021** explaining what he plans to do to move the case forward with respect to Jennifer Sabatier and "Nurse Scott." If the Court does not hear from the plaintiff by the end of the day on **January 25, 2021**, the Court will dismiss these defendants from the case on the next business day based on failure to prosecute. It will then issue a scheduling order with respect to the remaining defendants.

Dated at Milwaukee, Wisconsin this 11th day of January, 2021.

s/ *Brett H. Ludwig*
Brett H. Ludwig
United States District Judge

---

[2] Because discovery has not yet begun, the Court will deny Huertas' "motion to introduce relevant and essential evidence." Dkt. No. 77.